# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>DEONTE M. BAKER<br><br>_Defendant(s)_ | )<br>)<br>) Case No. 8:18-mj-1517-JSS<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 22, 2016__ in the county of __Pinellas__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956(h), 18 U.S.C. § 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i). | Money laundering; promoting unlawful activity. |
| 21 U.S.C. § 846 | Conspiracy to distribute cocaine |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Christian Daley, Special Agent IRS
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 5/17/18

_Judge's signature_

City and state: Tampa, FL

JULIE S. SNEED, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANTS

1. I, CHRISTIAN DALEY (herein "affiant"), Special Agent, Internal Revenue Service, Criminal Investigation, United States Treasury Department, being duly sworn, depose and state as follows:

Your affiant makes this affidavit in support of an application for issuance of an arrest warrant for DEONTE M. BAKER for conspiracy to commit violations of 18 U.S.C. §§1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), in violation of 18 U.S.C. § 1959(h); and conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

## TRAINING AND EXPERIENCE OF AFFIANT

2. Your affiant has been employed as a special agent for the Internal Revenue Service ("IRS"), Criminal Investigation since July 2000. Your affiant is trained in financial investigative techniques and accounting, and has conducted and participated in dozens of investigations of possible criminal violations of the Internal Revenue laws and related offenses, particularly those laws contained in the Internal Revenue Code (Title 26, United States Code) and violations relative to money laundering (Title 18, United States Code and Title 31, United States Code).

3. Your affiant has attended the Criminal Investigator Training Program and IRS Special Agent Basic Training at the Federal Law Enforcement Training Center, located in Brunswick, Georgia, which encompassed detailed training in conducting financial investigations. Prior to becoming an IRS Special Agent, your affiant was employed as a staff accountant. Your affiant received a Bachelor of Science Degree in Business Administration, concentrating in Accounting and Finance, from Salem State College, Salem, Massachusetts.

4. From training and experience, your affiant knows that it is a violation of 18 U.S.C. §1956(h), for two or more people to conspire to commit any offense under 18

U.S.C. §§ 1956 or 1957. Your affiant has reason to believe that BAKER conspired with others, mainly R.B., M.H., T.P., and K.H., to commit violations of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), by trying to conceal the true nature and purpose in financial transactions for the purpose of obtaining cocaine and other illegal drugs.

5. The information in this affidavit is either personally known to your affiant or has been provided to your affiant by other law enforcement officers and/or is based on a review of various documents and records more particularly described herein.

## FACTS

6. On December 22, 2016, detectives with the St. Petersburg FL Police Department ("SPPD") were dispatched to an address where a half-dressed female was found to be unresponsive. The female was declared dead at the site, and SPPD initially investigated the death as a potential homicide. Detectives with SPPD went to the address on record for the deceased, which was located in Palm Harbor, FL. That is where the detectives met R.B. for the first time.

7. R.B. informed the detectives that he had known the deceased for only a couple of months and had initially met her by answering her "Backpage Escort ad". He stated that he and the deceased would have sex frequently and R.B. would pay her, but she did not live with him. R.B. also stated that BAKER would visit R.B. frequently, but initially claimed that BAKER did not live there either.

8. BAKER voluntarily agreed to be interviewed by SPPD detectives on December 23, 2016, at the police station. He stated that he has known R.B. for approximately 10 years. BAKER stated that he and R.B. "met through drugs". BAKER stated that he and his girlfriend K.H. lived at R.B.'s home and their room was on the other side of R.B.'s home in Palm Harbor, FL. BAKER also stated that the deceased had been living with R.B. for the past few months and they had met through Backpage. At the time of the interview, BAKER claimed that he was not living with R.B. anymore

because he did not trust some of the people R.B. had coming to house, but BAKER was still visiting R.B. every day at the Palm Harbor, FL address.

9. BAKER also stated to the detectives at this time, that he frequently brought drugs, crack cocaine and marijuana, to the house for R.B. and the deceased to use. He stated that the deceased also used Dilaudid, but he didn't have access to that drug. He stated that the deceased was having other dealers bring it to the house, and that was why he had been staying away.

10. On December 23, 2016, SPPD detectives were met by T.P. at the police station. T.P. is a girlfriend of BAKER and also the mother of one of his children. According to the SPPD detectives, while they were investigating the circumstances of the homicide, T.P. was inconsistent with her statements and it did not appear she was truthful with her answers. When asked who was in the car with her on the evening of December 22, 2016 (up at R.B.'s house) she advised she was a passenger and did not know who was in the car with her. They asked how she didn't know this, and she just advised she was on her phone. She stated that she did not know what BAKER did with his time, because she did not get involved with his business. T.P. was asked if she had any medical or mental issues that would make her forget, but she said no.

11. On December 23, 2016, SPPD detectives interviewed K.H. at her hair salon in St. Petersburg, FL. K.H. stated that she knew the deceased personally. K.H. stated that she has known R.B. for years and that she and her boyfriend, BAKER, lived in R.B.'s house is a separate bedroom on the other side of the house from R.B.'s room. K.H. stated that she and BAKER stayed at R.B.'s house for months and the last time she had been there was on December 18, 2016, with BAKER, to retrieve some personal belongings. She stated that when she and BAKER left, K.H. left in her Mercedes Benz and BAKER drove his BMW 750 series sedan.

12. SPPD detectives obtained R.B.'s account information from Wells Fargo Bank and BB&T Bank. It revealed that dozens of R.B.'s checks were payable to

BAKER, T.P., K.H., and M.H. An analysis through approximately February 2017 showed that $334,640 had been paid to M.H., T.P. K.H., and BAKER. When initially asked what these payments were for, all four individuals stated it was for "cleaning and organizing" R.B.'s house. These checks ranged in amounts from $200 - $5,800. Many of checks were negotiated and dated just a few days apart.

13.    BAKER cashed checks payable to himself from March 2013 through April 2016. Over 100 checks were cashed by him alone in a three-year period.

14.    On December 12, 2017, SPPD detectives executed a State of Florida search warrant for R.B.'s residence, as well as arrest warrants for BAKER, K.H. and T.P. M.H. was arrested by SPPD on probable cause after her interview with a SPPD detective and your affiant. M.H. was employed as a corrections officer for the State of Florida Department of Juvenile Justice ("DJJ"). There are bank surveillance videos showing M.H. in her uniform cashing the checks described in paragraph 12 above.

15.    On December 12, 2017, your affiant and a SPPD detective interviewed M.H. Initially, she told your affiant that BAKER was her boyfriend and they had a child together. She received checks from R.B. for cleaning his house. She eventually admitted to your affiant that she knew the checks payable to her were for BAKER to use to buy drugs for R.B. She stated to your affiant that she was deliberately ignorant at first. She even admitted to purchasing disposable cell phones and renting vehicles for BAKER in her name with some of the funds she received. M.H. cashed checks payable to herself ranging from $400 - $5,000 from June 2016 through February 2017.

16.    On December 12, 2017, your affiant and a SPPD detective interviewed K.H. She was read her rights and signed a Miranda waiver form from the SPPD detective as she was under arrest for State of Florida violations and was in custody. K.H. initially denied knowing anything about BAKER using her as a nominee. K.H. eventually admitted, after being shown bank surveillance footage of her and BAKER

Page 4 of 6

depositing cash from the checks received from R.B. payable to K.H. into bank accounts she controlled, that BAKER used her as a nominee. She also admitted that she knew BAKER was a drug dealer and was supplying drugs to R.B.

17. K.H. further admitted that BAKER approached her about having the checks payable to her because he had so many checks already made payable to him. Surprisingly, K.H. even stated to your affiant and the SPPD detective that she and "her mother researched money laundering and what it is".

18. On December 12, 2017, your affiant and a SPPD detective interviewed BAKER. He was read his rights and signed a <u>Miranda</u> waiver form for another SPPD detective. BAKER admitted to your affiant that he is a drug dealer and basically R.B. was his only customer. BAKER admitted to not having any legal source of income and that all of his money came from selling drugs. BAKER admitted to recruiting his girlfriends, M.H., K.H. and T.P, to cash checks from R.B. so BAKER could get the drugs for R.B. BAKER stated that the drugs were mostly cocaine and some marijuana. BAKER also stated to your affiant that he would ask his girlfriends to buy disposable phones and rent cars in their names so he could purchase the drugs and be able to deliver them to R.B.

19. On December 12, 2017, R.B. was interviewed by SPPD detectives while they conducted a State of Florida search warrant. R.B stated BAKER supplied whatever drugs R.B. needed. R.B advised he would pay for the drugs by writing checks to BAKER or one of his girlfriends (K.H, M.H, T.P, and others). He understood when he wrote a check to one of them, it was ultimately going to BAKER for drugs to be delivered to R.B.

20. Additionally, on December 12, 2017, SPPD detectives seized, per consent from R.B., a check register and carbon copies of additional checks paid to K.H., M.H., T.P. and others with dates after February 2017. Because your affiant has not yet received official records for the checks, your affiant has not included them in this

affidavit as a violation amount, but your affiant believes the money laundering violation amount will increase and most likely exceed $400,000-$500,000.

21. On December 12, 2017, SPPD detectives arrested M.H. and K.H. for state money laundering violations and R.B and BAKER were arrested for various other state violations. T.P. was arrested a short time later for money laundering.

22. In early 2018, the State of Florida decided to "no-file" the money laundering charges, but did file some charges against BAKER and R.B. BAKER currently has one misdemeanor charge pending, and R.B. has one felony and one misdemeanor charge pending in Pinellas County Florida.

## Conclusion

23. Based upon all the foregoing, your affiant respectfully requests that a warrant be issued for the arrest of DEONTE BAKER, for violations of 18 U.S.C. § 1956(h); and 21 U.S.C. § 846.

This completes my affidavit.

_____
Christian Daley, Special Agent
Internal Revenue Service
Criminal Investigation

Sworn to and subscribed before me
This __17__ day of May, 2018

_____
JULIE S. SNEED
United States Magistrate Judge